## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PETEDGE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) 15-11988-FDS |
| | ) |
| FORTRESS SECURE SOLUTIONS, LLC, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is an action for patent and trademark infringement. Plaintiff PetEdge, Inc., is a Massachusetts-based pet products manufacturer. PetEdge owns U.S. Patent No. 7,621,236 ("the '236 patent") for a set of folding steps that convert into a ramp for pets to climb on to a bed. It markets the steps under the PET STUDIO family of marks, which includes U.S. Trademark Reg. No. 4,759,263.

Defendant Fortress Secure Solutions, LLC is a Washington limited liability company that sells pet products (and security systems) through national online retailers. The complaint alleges that Fortress produces and sells a product that infringes on the '236 patent and the PET STUDIO mark.

Fortress has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. For the following reasons, the motion will be denied.

## I.     Background

### A.     Procedural Background

On June 1, 2015, PetEdge filed suit against Fortress.  The complaint alleges (1) patent infringement in violation of 35 U.S.C. § 271(a)-(c); (2) Lanham Act trademark infringement in violation of 15 U.S.C. § 1114(1); (3) Lanham Act unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); (4) common-law trademark infringement; (5) common-law unfair competition; and (6) unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A.  (Compl. ¶¶ 25-62).

On June 29, 2015, Fortress moved to dismiss the complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  That motion was not accompanied by any affidavits.  In response, PetEdge filed an opposition and a declaration by its president and CEO, Andrew Katz, on July 13, 2015.  On July 20, 2015, Fortress filed a motion for leave to file a reply to PetEdge's opposition.  The Court granted Fortress's motion, and with its reply, Fortress also filed a declaration by its president, Michael Hofeditz.  PetEdge then moved to strike the Hofeditz declaration as new evidence under Local Rule 7.1(b)(1) and for failure to confer under Local Rule 7.1(a)(2).

### B.     Factual Background

Fortress Secure Solutions, LLC is a limited liability company based in Walla Walla, Washington.  (Hofeditz Decl. ¶ 2).  Fortress does not have an office in Massachusetts and is not registered to do business in the Commonwealth.  (*Id.* at ¶¶ 3-4).  Fortress does not pay taxes in Massachusetts.  (*Id.* at ¶ 4).  Fortress contends that it does not "specifically design or target any of its products for sale in Massachusetts," and does not "market its products to Massachusetts customers."  (*Id.* at ¶¶ 5-6).

Fortress does, however, market and sell products through online retailers to customers across the United States. (*Id.* at ¶ 7). Fortress products are available for purchase and delivery in Massachusetts, but only through online retailers such as Amazon.com and PetStew.com. (Katz Decl. ¶¶ 7, 10).

Under the alternative name of "Techege," Fortress advertised and offered for sale a product called the "Pet Studio Pine Frame Dog RampSteps, 3 Step" on Amazon.com. (*Id.* at ¶ 7).[1] Massachusetts Internet shoppers could view that product if they searched for "Pet Studio ramp steps" on Amazon.com. (Katz Decl. Ex. 1). Below the description of Fortress's product, in the "customers who viewed this item also viewed" section, Amazon.com listed two sets of patented ramp steps sold by PetEdge under its PET STUDIO mark. (*Id.*). PetEdge's three-step product was sold at a higher price than Fortress's "Pet Studio Pine Frame Dog RampSteps." (*Id.*).

Two Massachusetts PetEdge employees independently discovered the Fortress product on Amazon.com and purchased it. (Katz Decl. ¶¶ 7-8). Both sets of ramp steps were shipped to the PetEdge employees at their Massachusetts homes. (*Id.*). The record does not indicate whether Fortress sold its allegedly infringing product directly to Massachusetts residents through Amazon.com (and thus shipped the product itself), or whether it sold its product directly to Amazon.com without further contact with the end customers. Fortress also appears to sell other products on Amazon.com that are available for purchase by Massachusetts residents. (*Id.* at ¶ 13).

---

[1] The "Techege" name appears in small font under the larger name of the product on Amazon.com. (Katz Decl. Ex. 1).

PetEdge is a Massachusetts corporation that develops and distributes pet products, including a patented set of folding steps that convert into a ramp for pets to climb on to a bed. (*Id.* at ¶¶ 1, 3). PetEdge contends that Fortress's product infringes on its '236 patent and PET STUDIO marks. (*Id.* at ¶¶ 7, 9).

## II. **Standard of Review**

In determining whether a district court has personal jurisdiction over an out-of-state alleged patent infringer, the law of the Federal Circuit, rather than that of the regional circuit in which the district court sits, applies. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010). But in trademark infringement disputes, the jurisdictional inquiry is governed by the law of the circuit in which the district court sits. *See, e.g.*, *Edvisors Network, Inc. v. Educational Advisors, Inc.*, 755 F. Supp. 2d 272, 284 (D. Mass. 2010) (applying the constitutional due-process test as interpreted by the First Circuit).

Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction in a patent case without first holding an evidentiary hearing, the court must resolve all factual disputes in the plaintiff's favor. *Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). The court then applies the *prima facie* standard to determine whether it has jurisdiction over the defendant. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005). The *prima facie* standard is the "'most conventional' of the[ ] methods" for determining personal jurisdiction. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 51 (1st Cir. 2002) (quoting *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995)). In conducting a *prima facie* analysis, the court examines the existing record in the light most favorable to the plaintiff to determine whether facts sufficient to support jurisdiction over the

4

defendant have been alleged. *See Trintec*, 395 F.3d at 1282. The plaintiff bears the burden of making a sufficient showing on "all of the necessary ingredients for an exercise of jurisdiction consonant with due process." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994).

### III.   Analysis

PetEdge contends that the Court has specific jurisdiction over Fortress because (1) PetEdge is the registered owner of the '236 patent and the PET STUDIO marks, (2) Fortress's product infringes on the '236 patent and the PET STUDIO marks, and (3) Fortress purposefully directed its activities at Massachusetts residents by offering its product for sale through online retailers in Massachusetts and selling at least two products to Massachusetts residents. Specifically, PetEdge contends that Fortress's patent infringement is an intentional tort purposefully directed at harming its Massachusetts sales.

Fortress contends that this case should be dismissed for lack of personal jurisdiction because it does not specifically target Massachusetts consumers. Fortress further contends that the Court cannot exercise jurisdiction over it merely based on two Massachusetts sales that were initiated by PetEdge's employees.

The complaint alleges patent infringement and multiple claims of trademark infringement. Because those claims are governed by different jurisdictional standards, the Court will begin with PetEdge's patent-infringement claim, which is governed by the law of the Federal Circuit.

#### A.   PetEdge's Patent-Infringement Claim

"In order to establish personal jurisdiction in a patent infringement case over a non-resident defendant whose products are sold in the forum state, a plaintiff must show both that the

state long-arm statute applies and that the requirements of due process are satisfied." *Commissariat a l'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005). When interpreting a state long-arm statute in the patent-infringement context, a district court should "defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process," rather than look to the Federal Circuit for guidance. *Graphic Controls Corp. v. Utah Med. Prods.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998).

In Massachusetts, a federal court assessing personal jurisdiction may proceed directly to the constitutional analysis, because "the Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over [a] person to the limits allowed by the Constitution of the United States." *Adams v. Adams*, 601 F.3d 1, 5 (1st Cir. 2010). Those limits "require[ ] only that in order to subject a defendant to a judgment *in personam*, if [defendant] be not present within the territory of the forum, [defendant] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A district court may exercise either specific or general jurisdiction over an alleged patent infringer. "'Specific' jurisdiction refers to the situation in which the cause of action arises out of or relates to the defendant's contacts with the forum. It contrasts with 'general' jurisdiction, in which the defendant's contacts have no necessary relationship to the cause of action." *Beverly Hills Fan*, 21 F.3d at 1562 n.10 (citations omitted).

There is no dispute here that the Court does not have general jurisdiction over Fortress. For specific jurisdiction, the Federal Circuit applies a three-prong test to determine if the due-

6

process requirements have been met: "(1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns*, 626 F.3d at 1231 (citing *Akro*, 45 F.3d at 1545-46).

### 1. Purposefully Directed Activities

The first prong of the Federal Circuit test for specific jurisdiction is aimed at determining whether the defendant has a sufficient quantum of "minimum contacts" with the forum state to satisfy the requirements of the Due Process Clause. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001) ("The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis.").

It is undisputed that two Massachusetts residents purchased Fortress's allegedly infringing product; that they purchased the product through Amazon.com; and that both individuals were employees of PetEdge.[2] PetEdge contends that Fortress committed an intentional tort because even though it had constructive notice of the '236 patent under the patent marking statute, 35 U.S.C. § 287(a), it offered its allegedly infringing product for sale in Massachusetts and sold it to at least two Massachusetts residents. That intentional tort of

---

[2] As noted, the record does not indicate whether Fortress sold its allegedly infringing product directly to Massachusetts residents or whether it sold its product directly to Amazon.com without further contact with the end customers.

For two reasons, the Court will proceed under the assumption that Fortress, not Amazon.com, shipped its product into Massachusetts. First, the Court must resolve all factual disputes in the plaintiff's favor on a motion to dismiss for lack of personal jurisdiction. *See Deprenyl Animal Health, Inc. v. University of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002). Here, Fortress has provided no evidence that it did not ship its product to Massachusetts. Second, it appears that the default setting on Amazon.com is that the seller ships the item directly to the buyer, unless the item has a label that reads "fulfilled by Amazon." *See, e.g.*, *Milo & Gabby, LLC v. Amazon.com, Inc.*, 2015 WL 4394673, at *14 (W.D. Wash. July 16, 2015). Here, Fortress's product had no such label. (*See* Katz Decl. Ex. 1). For those reasons, the Court will assume that if Fortress sold its product through Amazon.com, it shipped it directly to two Massachusetts consumers.

infringement, PetEdge contends, caused it economic harm in Massachusetts where the product was offered for sale and sold.

At least in the context of interpreting state long-arm statutes, the Federal Circuit has consistently held that a patent infringer is subject to personal jurisdiction where it sells the allegedly infringing product. Two cases are illustrative of the court's reasoning.

First, in *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1569 (Fed. Cir. 1994), the Federal Circuit considered the issue of where a defendant's patent infringement causes a patentee injury. The case involved the application of Virginia's long-arm statute, which required the defendant to "caus[e] tortious injury in [Virginia] by an act or omission outside [Virginia] . . . ." *Id.* The court rejected the rule that "the situs of the injury is the situs of the intangible property interest, which is determined by where the patent owner resides." *Id.* at 1570. Instead, the court, comparing patent infringement to an intentional tort, held that "the situs of the injury is the location, or locations, at which the infringing activity directly impacts on the interests of the patentee, here the place of the infringing sales." *Id.* at 1571. The Court reasoned that "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there [and the] loss is immediate when the patent holder is marketing a competing product." *Id.*

Second, in *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed. Cir. 1994), the Federal Circuit clarified its intentional-tort analogy, noting that:

> [W]hile it may be appropriate to speak loosely of patent infringement as a tort, more accurately the cause of action for patent infringement is created and defined by statute [in 35 U.S.C. § 271(a)] . . . [and that] statute does not speak generally of the 'tort of patent infringement,' but specifically of a liability that arises upon the making, using, or selling of an infringing article.

*Id.* (citation omitted). Despite its clarification of the intentional-tort analogy, the court reached the same result as it did in *Beverly Hills Fan*. Reasoning that § 271(a) "clearly suggests the conception that the 'tort' of patent infringement occurs where the offending act is committed and not where the injury is felt," the Court "h[eld] that to sell an infringing article to a buyer in Illinois is to commit a tort there (though not necessarily only there)." *Id.*

However, because the Supreme Court has recently clarified where intentional tortfeasors can be subject to personal jurisdiction, the Court must analyze whether the Federal Circuit rule for patent infringement requires reconsideration. In *Walden v. Fiore*, ––– U.S. ––––, 134 S. Ct. 1115 (2014), the Court held that a Nevada court could not exercise personal jurisdiction over a Georgia police officer merely on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada. For intentional torts, the Court explained, "it is . . . insufficient [for minimum contacts] to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff." *Walden*, 134 S. Ct. at 1123 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In reversing the Ninth Circuit's ruling, the Court noted that "no part of [defendant's] course of conduct occurred in Nevada . . . [he] never traveled to, conducted activities within, contacted anyone in, *or sent anything or anyone to Nevada*." *Id.* at 1124 (emphasis added). In short, the Court held that "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id.* at 1123.

The Federal Circuit has not directly addressed a personal jurisdiction issue since the Supreme Court's decision in *Walden*. That decision, however, does not appear to affect the rule announced in *Beverly Hills Fan* and *North American Philips*: defendants in patent-infringement

9

cases are subject to jurisdiction wherever they sell allegedly infringing products. In *Walden*, the Court held that jurisdiction over a tortfeasor must be based on the defendant's "intentional conduct" directed toward the forum, not "random, fortuitous, or attenuated contacts" or the "unilateral activity" of the plaintiff (such as the *Walden* plaintiffs, who suffered a tort in Georgia and then traveled back to Nevada). When applying that rule, the Court found that the defendant did not direct "intentional conduct" toward the forum, such as "sen[ding] anything or anyone to [the forum]." That rule is consistent with the Federal Circuit rule for alleged patent infringers: "to sell an infringing article to a buyer in [the forum] is to commit a tort there (though not necessarily only there)." *See North Am. Philips Corp.*, 35 F.3d at 1579.

Furthermore, the district courts that have recently addressed motions to dismiss for lack of personal jurisdiction in patent-infringement cases have cited *Walden* and continued to apply the Federal Circuit place-of-sale rule. *See, e.g.*, *Presby Patent Trust v. Infiltrator Sys., Inc.*, 2015 WL 3506517, at *2 (D.N.H. June 3, 2015) (citing *Walden* and granting defendant's motion to dismiss, in part, because "[defendant] neither marketed nor sold the accused [product] in New Hampshire"); *Skyworks Sols., Inc. v. Kinetic Techs. HK Ltd.*, 2015 WL 461920, at *4-5 (D. Mass. Feb. 4, 2015) (citing *Walden* and granting motion to dismiss because "[plaintiff] [ ] failed to establish a *prima facie* showing under the Federal Circuit's test because there is nothing in the record to indicate that [defendant] itself has undertaken any action purposefully to establish business contacts with Massachusetts").

Accordingly, there is no reason why the Federal Circuit rule—that an alleged patent infringer is subject to personal jurisdiction anywhere it sells its allegedly infringing product— would not apply here. Taking PetEdge's allegations as true, Fortress offered the allegedly infringing product for sale in Massachusetts, at least two Massachusetts residents purchased the

product, and PetEdge suffered "economic loss" in Massachusetts because it "los[t] business" here. *See Beverly Hills Fan*, 21 F.3d at 1571. In short, this case presents facts far different from those in *Walden*, where "no part of [defendant's] course of conduct occurred in [the forum]." *Id.* at 1124.[3] Therefore, Fortress is subject to personal jurisdiction in Massachusetts.

Fortress further contends that the unilateral actions of PetEdge's employees—that is, their purchases of the allegedly infringing products on Amazon.com—are not sufficient minimum contacts to support a finding of personal jurisdiction. In its reply memorandum, Fortress cites a line of cases in support of its argument that a plaintiff cannot rely solely on its own manipulative purchases to create jurisdiction. *See, e.g.*, *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) (declining to assert personal jurisdiction over defendants in a trademark infringement action when it was "obvious that plaintiffs made this purchase . . . in order to bolster their argument that this Court has personal jurisdiction over defendants"); *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (declining to treat a purchase made by a plaintiff in the forum state as a qualifying contact for personal jurisdiction, and noting that "it was . . . the acts of [plaintiff] that brought the infringing product

---

[3] In a footnote, the *Walden* court explicitly stated that its holding did not address cases involving intentional torts committed by use of the Internet:

> Respondents warn that if we decide petitioner lacks minimum contacts in this case, it will bring about unfairness in cases where intentional torts are committed via the Internet or other electronic means (e.g., fraudulent access of financial accounts or "phishing" schemes). As an initial matter, we reiterate that the "minimum contacts" inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-292 (1980). In any event, this case does not present the very different questions whether and how a defendant's virtual "presence" and conduct translate into "contacts" with a particular State. To the contrary, there is no question where the conduct giving rise to this litigation took place: Petitioner seized physical cash from respondents in the Atlanta airport, and he later drafted and forwarded an affidavit in Georgia. We leave questions about virtual contacts for another day.

134 S. Ct. at 1125 n.9.

into the forum").

But Fortress misconstrues the nature of its own activities in Massachusetts by comparing them with the actions of the defendants in the "manipulative purchase" line of cases. In *Buccellati* and *Edberg*, the defendants sold their products only on their own websites; they did not place their products into the national stream of commerce through online retailers. Further, the *Buccellati* and *Edberg* plaintiffs initiated the defendants' contacts with the forum by seeking out their websites, and in one case even used a third-party buyer to conceal the true location of the purchaser. *See Buccellati*, 935 F. Supp. 2d at 620 ("Jurisdictional discovery also revealed that Defendants' website . . . has made only one sale in [the forum] . . . to Plaintiffs' New York-based private investigator . . . ."); *see also Edberg*, 17 F. Supp. 2d at 107 (noting that the defendant's contact with the forum was not caused by its "promotion, advertising, or sales activities," but by the plaintiff hiring a third party to purchase the defendant's product).

Here, Fortress was not a company that exercised control over its sales by limiting its marketing and advertising to its own website. Rather, it made an affirmative decision to place its product into the national stream of commerce and itself initiated contact with the Commonwealth by selling its product through national online retailers like Amazon.com. This is not a case where PetEdge travelled out of state to purchase the allegedly infringing product, unilaterally took the product back into Massachusetts, and is now claiming that it is feeling the "effects" of infringement in Massachusetts. *See Walden*, 134 S. Ct. at 1125.

There is ample evidence of Fortress's "intentional conduct" directed toward Massachusetts before the PetEdge employees even purchased the product. *See id.* at 1123. Viewing the evidence in the light most favorable to PetEdge, Fortress advertised through national online retailers, and knowing that those retailers often sold products to Massachusetts

consumers. By advertising to Massachusetts residents, Fortress necessarily "offer[ed] to sell" its allegedly infringing product in Massachusetts. *See* 35 U.S.C. § 271(a). Finally, when Fortress received orders from Massachusetts residents, it did not refuse to fulfill them, or otherwise attempt to avoid doing business in the state. Rather, taking PetEdge's allegations as true, Fortress purposefully transacted with two Massachusetts residents, and shipped its allegedly infringing product into the Commonwealth. Fortress's conduct directed toward the Commonwealth is more substantial than the forum contacts of the defendants in *Buccellati* and *Edberg*, and it is sufficient to support a finding of jurisdiction under *Walden* and *Beverly Hills Fan*. The fact that PetEdge is using its employees' purchases of the product to support its broader allegations of Fortress's infringing Massachusetts sales makes little difference, especially because PetEdge has not had the benefit of jurisdictional discovery and need only make a *prima facie* showing of facts in support of jurisdiction.

Moreover, a case that Fortress does not cite, *Otter Products, LLC v. Seal Shield, LLC*, 2014 WL 1213475 (D. Colo. Mar. 24, 2014), is more instructive, and highlights the crucial differences between this case and the "manipulative purchase" line of cases. In *Otter Products*, the plaintiff sued two defendants, Seal and Klear, for infringing on its patents for cell-phone cases. *Id.* at *1. The court found that there were sufficient facts to exercise personal jurisdiction over defendant Seal, but not defendant Klear. *Id.* at *8. In exercising jurisdiction over Seal, the court noted that "Seal ha[d] made direct sales to [the forum], as well as placed its products into the 'stream of commerce' via national retailers and distributors with the clear understanding that its products will find their way to [the forum]." *Id.* at *3. In contrast, the court did not exercise jurisdiction over Klear because it made sales only through its own website, and because there was "no evidence that Klear s[old] products through national distributors or that Klear advertised

13

its products through channels that would be expected to reach Colorado residents." *Id.* Here, Fortress's advertising and sales through Amazon.com are more analogous to the activities of Seal than Klear.

Furthermore, and in any event, Fortress's argument overstates the importance of its two Massachusetts sales to the minimum-contacts inquiry in a patent-infringement case. Federal Circuit law remains unclear whether an alleged infringer even needs to sell a product in the forum to confer jurisdiction; mere offers for sale may be sufficient. In 1996, after the Federal Circuit ruled in *Beverly Hills Fan* and *North American Philips*, Congress amended 35 U.S.C. § 271(a) such that "offers to sell" infringing products triggered liability for patent infringement. *See* Uruguay Round Agreement Act, Pub. L. No. 103-465, § 533(a), 108 Stat. 4809 (effective Jan. 1, 1996). The Federal Circuit has held in some cases that a finding of jurisdiction and liability does not even require a formal offer in the sense of contract law, much less a sale, and instead can be met by advertising activity that is sufficiently definite in terms of price and content. *See, e.g.*, *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999) ("In its first attempt to define the contours of an 'offer to sell,' this court held that there had been an 'offer to sell' where the defendant manufacturer had communicated to prospective buyers both a description of the product and 'a price at which it can be purchased.'" (quoting *3D Sys., Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998)).

In *3D Systems*, the Federal Circuit ruled that price quotation letters, sent by an alleged infringer to California residents, constituted offers to sell under § 271(a), and on that basis, held that the defendant was subject to personal jurisdiction in California even though it never made a single sale in California. *See* 160 F.3d at 1378-81 ("One of the purposes of adding 'offer[ ] to sell' to § 271(a) was to prevent exactly the type of activity [defendant] has engaged in, *i.e.*,

14

generating interest in a potential infringing product to the commercial detriment of the rightful patentee."). Here, and unlike the defendant in *3D Systems*, Fortress both advertised its allegedly infringing product to Massachusetts residents and sold its product in the forum. Furthermore, Fortress's advertisements through online retailers surely communicated to prospective Massachusetts buyers both a description of the product and a price at which it could be purchased. Whenever Massachusetts Internet shoppers searched for "Pet Studio ramp steps" on Amazon.com, Fortress's allegedly infringing product appeared alongside—and at a lower price than—PetEdge's patented product. (*See* Katz Decl. Ex. 1).

Therefore, viewing the record in the light most favorable to PetEdge, Fortress purposefully directed its actions—that is, both offers and even actual sales of its allegedly infringing product—as residents of the Commonwealth. Accordingly, those purposeful contacts are sufficient minimum contacts for this Court to exercise personal jurisdiction over Fortress.

### 2.  **Relatedness**

The second prong of the Federal Circuit's test for personal jurisdiction deals not with the quantum of the defendant's contacts with the forum state, but rather with the content of those contacts. Where, as here, the defendant's contacts with the forum state are not systematic and pervasive, due process dictates that jurisdiction can only be exercised over a defendant if its contacts with the forum state form the basis for or relate to the specific claims at issue. *Inamed*, 249 F.3d at 1360.

Patent infringement occurs when someone "without authority makes, uses, offers to sell or sells any patented invention." 35 U.S.C. § 271(a). Thus, a patent-infringement case arises out of any such activities alleged to be carried out by the defendant in the complaint. *See 3D Systems*, 160 F.3d at 1378. All of Fortress's contacts with the Commonwealth alleged in the

complaint involve either selling or offering to sell its allegedly infringing product in Massachusetts.

Accordingly, the Court finds that Fortress's contacts with Massachusetts are all related to the patent-infringement claims before it, and therefore the Court may exercise personal jurisdiction over Fortress.

### 3. Reasonableness and Fairness

Even if the requisite contacts with the forum exist, the court's exercise of jurisdiction must comport with traditional notions of "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. For example, "[a] clash between the fundamental social policies of a forum state and another state related to the action could constitutionally trump jurisdiction." *3D Systems*, 160 F.3d at 1380. The third and final prong of the Federal Circuit's test for personal jurisdiction is intended to determine if such a situation exists in a particular case.

However, the Federal Circuit has maintained a restrictive characterization of the third prong, remarking that "such defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" *Akro*, 45 F.3d at 1549 (quoting *Beverly Hills Fan*, 21 F.3d at 1568).

The five "gestalt" factors articulated by the Supreme Court for determining whether the exercise of personal jurisdiction would be fair and reasonable are (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most

effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. *See Burger King*, 471 U.S. at 477.

Fortress contends that requiring it to defend the claims in this forum would violate its due process rights, but does not specifically address any of the five "gestalt" factors. The patent law of the United States, as established by the Supreme Court and the Federal Circuit, will apply to the claims at issue no matter where they are litigated, and Fortress has not suggested a forum that would be more convenient. Therefore, the Court finds no arguments sufficiently compelling to stop it from exercising otherwise constitutional personal jurisdiction over Fortress.

### B. PetEdge's Other Claims

The complaint also alleges claims for trademark infringement and unfair competition under the Lanham Act and multiple state laws. Because the Court finds that it has specific personal jurisdiction over Fortress as to PetEdge's patent-infringement claim, it need not address the parties' arguments regarding the other claims. *See, e.g.*, *Home Owners Funding Corp. of Am. v. Century Bank*, 695 F. Supp. 1343, 1345 (D. Mass. 1988) ("In a multi-count complaint, if a court has personal jurisdiction over the defendant with respect to one count, it has personal jurisdiction with respect to all counts."); *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F. Supp. 1168, 1175 (D. Mass. 1986) (holding that a court may exercise pendant personal jurisdiction over a foreign defendant with respect to state law claims that arise out of a nucleus of operative facts common to a federal antitrust claim).

### C. PetEdge's Motion to Strike

Because the Court finds that it has personal jurisdiction over Fortress, it need not address PetEdge's motion to strike the Hofeditz declaration under Local Rules 7.1(b)(1) and 7.1(a)(2).

## IV.     Conclusion

For the foregoing reasons, the Court finds that it has specific personal jurisdiction over Fortress, and the defendant's motion to dismiss for lack of personal jurisdiction is therefore DENIED.

**So Ordered.**

|  |  |
|---|---|
| Dated: November 17, 2015 | /s/ F. Dennis Saylor<br>F. Dennis Saylor IV<br>United States District Judge |