**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETEDGE, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FORTRESS SECURE SOLUTIONS, LLC, )<br>)<br>Defendant. )<br>) | 1:15-cv-11988-FDS |

**PETEDGE'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE FORTRESS'S PRELIMINARY INVALIDITY AND NON-INFRINGEMENT CONTENTIONS**

PetEdge respectfully asks this Court to strike the invalidity and non-infringement contentions of Fortress Secure Solutions, LLC. The contentions are deficient in two ways. First, in violation of the Court's Scheduling Order—and in disregard of Local Patent Rule 16.6 and related Appendix E—Fortress has failed to provide any non-infringement contentions. Instead, Fortress offers the unbelievable excuse that it could not prepare non-infringement claim charts because it was not able to obtain or examine *its own product*. That is no excuse. Fortress has known the identity of the accused product since June 2015, and its failure to examine even a single unit of its *own* product shows, at best, a lack of diligence. But something more suspicious than a lack of diligence may be going on. In sworn interrogatory answers served just a month earlier, Fortress claimed to have at least 400 units of the accused product in storage. But when it came time to submit non-infringement contentions a month later, Fortress conveniently could not find even a single unit to examine. The only possible conclusion is that Fortress wants to avoid submitting any contention that would, in effect, show the weakness in its position.

Second, Fortress's invalidity contentions fail to adequately identify the alleged prior art, articulate which aspect or portion of the cited reference allegedly discloses each limitation, or

even "specify whether [the alleged prior art] anticipates or is relevant to the obviousness inquiry." Dkt. 38 § 1(c). Furthermore, Fortress's contentions include boilerplate allegations of invalidity under 35 U.S.C. §§ 101 and 112, without any discussion or analysis of any kind. Thus, these invalidity contentions add nothing to Fortress's conclusory and boilerplate answer and affirmative defenses (which PetEdge had previously moved to strike) and also violate the Court's Scheduling Order. Therefore, PetEdge respectfully requests that this Court strike Fortress's preliminary invalidity and non-infringement contentions, as further argued below.

## FACTS

### A. PetEdge's Detailed Infringement Contentions

PetEdge filed its complaint on June 1, 2015, alleging, among other causes of action, that Fortress infringes PetEdge's U.S. Patent No. 7,621,236 (the "'236 Patent"). *See* Dkt. 1. The complaint identified the Fortress TECHEGE™ Pet Studio Pine Frame Dog RampSteps ("RampSteps") as an accused product. *See* Dkt. 1 at 2, 6, and Exhibit B. PetEdge even purchased two samples of the product and used them in preparing the complaint and the claim charts accompanying its infringement contentions. *See* Dkt. 11-1, *Declaration of Andrew Katz Opposing Fortress Secure's Motion to Dismiss for Lack of Jurisdiction* ¶ 8; *see also* Dkt. 41-1, *PetEdge's Preliminary Infringement Contentions*.

On February 1, 2016, the Court issued its Scheduling Order, setting forth the deadlines for the parties' infringement, non-infringement, and invalidity contentions. Dkt. 38. Pursuant to that Scheduling Order, on February 8, 2016, PetEdge filed and served its infringement contentions, once again identifying RampSteps as the accused product and detailing how RampSteps infringed each of the asserted claims. Dkt. 41-1. Indeed, the claim charts are quite

detailed and illustrate, using photos of the accused product, where each and every claim limitation can be found. The charts leave nothing to the imagination. For example:

| Claim Element | Infringing Feature |
| --- | --- |
| 1. An apparatus comprising: | The Fortress TECHEGE™ "PetStudio Pine Frame Dog RampSteps" are an apparatus. |
| a frame supporting an upper platform member and a lower platform member; | The Accused Product comprises a frame supporting an upper platform member and a lower platform member. The photo below shows the Accused Product with the frame, upper platform member, and lower platform member labeled. |

| Claim Element | Infringing Feature |
| --- | --- |
| 13. An apparatus according to claim 12, wherein the upper and middle platform members are in the ramp position and the lower platform member is in the step position. | As seen above at claim 12, the Accused Product comprises an apparatus according to claim 12. The photo below shows the upper and middle platform members of the Accused Product in the ramp position and the lower platform member in the step position: |

3

ME1 22208918v.1

### B. Fortress Failed to Serve Non-Infringement Contentions

The Court's Scheduling Order set March 11, 2016 as the deadline for Fortress to serve its non-infringement and invalidity contentions. Dkt. 38 § 1(c). On that date, Fortress filed and served its contentions. Fortress, however, failed to provide any non-infringement contentions whatsoever. Here is the sum total of Fortress's purported "contention" regarding non-infringement:

> 9. Due to difficulties obtaining a RampSteps unit from Amazon, Fortress has not been able to physically examine the RampSteps unit. As of the date of this disclosure, a RampSteps unit has been shipped from Amazon to undersigned counsel and upon receipt Fortress will complete its examination of unit and supplement these contentions accordingly[1]. Fortress states upon information and belief that the RampSteps does not include each and every limitation of the claims of the Patent-in-Suit, and does not literally infringe the Patent-in-Suit. Fortress does not indirectly infringe the Patent-in-Suit as it does not contribute to or induce infringement of the claims of the Patent-in-Suit. Further Fortress has not knowingly induced infringement by any other person, nor does it possess (or ever possessed) specific intent to encourage another's infringement of the Patent-in-Suit. A claim chart comparing the RampSteps to each limitation of the Patent-in-Suit cannot be prepared until receipt of a RampSteps unit from Amazon.

Dkt. 42 at p. 5.

Failing to obtain the accused product in time to draft noninfringement contentions is hardly an excuse—and, is unbelievable—given that it is Fortress's *own* product.[1] But even more egregious, this contention directly contradicts Fortress's sworn interrogatory answers, served just a month earlier, that it had over 400 of the accused products in storage. Specifically, in response

---

[1] It is even more unbelievable given that Fortress should have set aside a sample at the very start of the case, last June, so that it could appropriately answer PetEdge's complaint in compliance with its Rule 11 obligations. Without the accused product, how could Fortress have possibly denied infringement in its answer?

to PetEdge's interrogatories, Fortress represented that it had "purchased 475 units of the [Accused] Product . . . [and] sold 40 units." Exh. A, *Defendant's Answers & Objections to Plaintiff's First Set of Interrogatories*, Answer to Interrogatory No. 8, at 4. Fortress also claimed that it stopped selling the accused RampSteps shortly after receiving PetEdge's complaint and that it stored the remaining units:

> **INTERROGATORY NO. 10**
>
> When and how did you first become aware of the PetEdge Marks? What steps did you take after learning of the PetEdge Marks with respect to sales of the Accused Products, Fortress PET STUDIO Products, and/or products identified in response to Interrogatory Nos. 1 and 2?
>
> **ANSWER:** After service of the complaint, Defendant ceased all efforts to sell its remaining inventory of the Product and has stored the Product at its expense since that time.

*Id.* at 5. In other words, by its own admission, Fortress had 435 unit (475 – 40) in storage. It could and should have had the product much earlier.[2]

Further, in response to Rule 34 document requests a *month* earlier, Fortress implied that it had the product and was in the process of shipping it to PetEdge. Specifically, in early January 2016, PetEdge asked Fortress to produce two samples of the accused RampSteps. In response, Fortress represented that, as of February 12, 2016, the date it served its response, "Defendant is presently shipping these products to the undersigned," and would "provide the products to Plaintiff upon receipt." *See* Exh. B, *Defendant's Answers & Objections to Plaintiff's First Set of Requests for Production*, Response to Request No. 25, at 9 (emphasis added). In other words,

---

[2] Either Fortress had over 400 units in storage or else it did not stop selling the product, as it claimed, and thus had no more left in storage. Further, even assuming that it had to order its own product from Amazon, it should have done so over a month before its non-infringement contentions were due. Fortress knew that it would need to prepare non-infringement contentions and, indeed, also knew months before that PetEdge had requested samples. That is a lack of diligence if nothing else.

over a month before, Fortress had the product and was "presently" shipping it to its counsel, Mr. Reiling, who would then send it to PetEdge's counsel.  (PetEdge never received the requested samples, however.)  So PetEdge's response to the document request seems dubious.

Even if Fortress somehow could not locate its own product in time to draft its contentions, it could at least rely on the product specifications.  In a footnote accompanying its non-infringement contentions, Fortress also represented that it has requested plans and drawings of the accused RampSteps from the manufacturer.  Dkt. 42 at 5 n.1.  Yet a month earlier, in response to PetEdge's Rule 34 request for just those very product specifications and drawings, Fortress stated, "No such documents exist."  Exh. B, Response to Request No. 22, at 8.  Either the plans and drawings exist, in which case Fortress should have had them long ago, or, as claimed in response to the document request, they do not exist.  Fortress cannot have it both ways.  If, in fact, the documents exist, Fortress should be compelled to revisit each and every one of its responses to PetEdge's discovery requests in which it claimed that no documents exist.

If Fortress truly was not in position to meet the Court's deadlines, then it should have moved this Court for an extension after first conferring with PetEdge.  (Fortress could also have borrowed one of the sample accused products that PetEdge easily purchased on Amazon.com.)  But Fortress never did so. In effect, Fortress's "excuse" is an attempt to award itself a unilateral extension of its time to submit its contentions without asking either this Court or PetEdge for an extension.  This is not the first time that Fortress has tried to give itself a unilateral extension without first asking PetEdge.  Specifically, Fortress's responses to PetEdge's interrogatories and document requests were originally due on February 5, 2016.  On that day, late in the afternoon, the legal assistant to Fortress's counsel sent PetEdge's counsel a one-line email saying that Fortress would respond the following week.  This email was not a request for an extension but

rather a declaration.  PetEdge's counsel responded that he would appreciate being asked first about extensions and reminded Fortress's counsel that he had failed to meet-and-confer before. PetEdge's counsel agreed to an extension but also warned that he would move to strike a late document in the future if Fortress's counsel did not have the professional courtesy to first request an extension.  *See* Exh. C, Email Chain between Mr. Belt and Mr. Reilling.  The point is that Fortress's own lack of diligence led to its deficient contentions.

        **C.**        **Fortress's Deficient and Boilerplate Invalidity Contentions**

The Court's Scheduling Order provides that invalidity contentions must "identify prior art that anticipates or renders obvious" the asserted claims and, "for each such prior art reference," specify whether it anticipates or is relevant to obviousness. Dkt. 38 § 1(c).  Fortress has failed to adequately identify the alleged prior art.  In particular, Fortress fails to adequately identify "Mr. Herzher's Decorative 3-Step Pet Step (petsmart.com) (2007)" and "Pet Ramps & Pet Steps for Dogs and Cats (1800PetMeds) (2000)." *See* Dkt. 42 at 3-4.  The 1800PetMeds references are dated March 11, 2016, and contain 25 different products.  Fortress neither identifies which of these products it contends are prior art nor presents any evidence that any of these products were on sale before the priority date of the '236 patent.[3]  With respect to the Mr. Herzher reference, Fortress similarly has presented no evidence that this product was on sale before the priority date of the '236 patent.  Simply put, Fortress failed to provide any evidence that identifies these references as prior art to the '236 patent.

Fortress's invalidity claim chart, attached to its contentions as Exhibit A, is inadequate. With the exception of the Mogck reference, Fortress has not even attempted to draft an invalidity chart for any of the other four references that it contends render the '236 patent invalid.

---

[3] The '236 patent issued on November 24, 2009, based on an application filed on June 6, 2007. The priority date is one year before the application was filed—that is, June 6, 2006.  Nothing in Fortress's invalidity contentions authenticates these products as having been on sale before then.

As to the Mogck claim chart itself, the analysis falls well short of the most basic standards of patent litigation practice. Nowhere does Fortress attempt to identify or cite to which particular aspect or portion of the Mogck reference discloses each claim limitation. For example, it is customary in patent litigation to cite to the column and line of a prior art patent to show exactly where the alleged disclosure can be found. After all, it is the defendant's burden to prove invalidity, not the patent owner's burden to go hunting in the prior art for the relevant disclosures. But Fortress has failed to meet even this basic requirement. An exemplary screenshot of Fortress's analysis in its Exhibit A claim chart is set forth below:

EXHIBIT "A"

| Claim Element | Prior Art or Other Evidence | Basis of Invalidity Contention |
|---|---|---|
| An apparatus comprising | U.S. Patent No. 5,634,440 (Mogck). | '440 Mogck also discloses an apparatus. To the extent that '440 Mogck does not disclose this limitation it would have been obvious to combine '440 Mogck with other prior art including such prior art set forth in this preliminary disclosure. |
| A frame supporting an upper platform member and a lower platform member | U.S. Patent No. 5,634,440 (Mogck) | '440 Mogck also discloses a frame with both an upper platform member and a lower platform member. To the extent that '440 Mogck does not disclose this limitation it would have been obvious to combine '440 Mogck with such prior art including such prior art set forth in this preliminary disclosure. |

Dkt. 42, Exhibit A.

Again, Fortress attempted to chart only this one reference and did not bother to chart any of the other alleged prior art references. Nor did Fortress bother to show whether any of the prior art could be combined in an obviousness analysis.

8

To the extent that Fortress alleges that the asserted claims of the '236 patent are invalid as obvious, Exhibit A to the contentions is also inadequate. Contrary to the Court's Scheduling Order, Fortress has failed to "specify whether it anticipates or is relevant to the obviousness inquiry." Instead, Fortress's Exhibit A leaves ambiguous whether it is alleging anticipation or obviousness. Each limitation in Exhibit A ends with "To the extent that '440 Mogck does not disclose this limitation it would have been obvious to combine '440 Mogck with such prior art including such prior art set forth in this preliminary disclosure." Fortress has failed to identify why the '236 patent would be invalid as obvious in view of Mogck alone. Furthermore, to the extent that Fortress alleges that the '236 patent is invalid as obvious based on Mogck in view of some other prior art reference or references, Fortress failed to identify, for each limitation, the reference or references and point out where in those references Fortress contends that the alleged invalidating prior art can be found. None of this was done.

Finally, Fortress's contentions include conclusory allegations "that Plaintiff's claims are invalid under 35 U.S.C. § 101, 112." Dkt. 42 ¶ 8. The contentions lack any factual support or even reference to anything in the '236 patent's specification or claims that Fortress contends support these claims. Here is the sum and substance of the boilerplate contention:

> **C.     Additional Grounds for Invalidity**
>
> 8.     In addition to the prior-art based invalidity contentions set forth above, Fortress contends that the asserted claims of the Patent-in-Suit are invalid for failing to satisfy one or more or the requirements of 35 U.S.C. § 112, ¶¶1 and 2. Fortress continues to investigate grounds of invalidity based on indefiniteness, lack of enablement, and inadequate written description. At this juncture, Fortress contends that Plaintiff's claims are invalid under 35 U.S.C. § 101, 112 for the following reasons: (1) the specification of the Patent-in-Suit lack a written description of the claimed inventions in full, clear, concise, and exact terms as required by 35 U.S.C. § 112, ¶ 1; (2) the specifications of the Patent-in-Suit lack an enabling disclosure as required by 35 U.S.C. § 112, ¶ 1; and/or (3) the asserted claims are invalid as indefinite under 35 U.S.C. § 112, ¶ 2
>
> because the claims fail to particularly point out and distinctly claim the subject matter which the applicants regarded as the invention.

*Id.* at pp. 4-5.

This paragraph merely parrots the statutory language without drilling into the facts supporting the contentions. As such, it adds nothing to Fortress's conclusory answer and affirmative defenses and does not shed any light on the invalidity contentions at all. (Indeed, one wonders what § 101 has to do with a mechanical device like the claimed convertible ramp/steps given that § 101 is typically reserved for business methods and gene patents).

### ARGUMENT

**A.     The Court Should Enforce Local Rule 16.6 and the Scheduling Order by Striking Fortress's Deficient Non-Infringement Contentions**

This Court's Local Rule 16.6 and accompanying Appendix E require that parties' infringement and invalidity positions be disclosed at a particular time and with a particular degree of specificity. The purpose of Local Rule 16.6 is to "help provide certainty and order to patent litigation," and it applies equally to both patentee and accused infringer. *See* Public

10

Notice Regarding New Local Rule 16.6, Scheduling and Procedures for Patent Cases, *available at* http://www.mad.uscourts.gov/general/pdf/PubNotice-NewPatent-LR16.6_000.pdf).  Early, complete contentions are intended to frame the scope of a case, promote full and timely discovery, and provide parties with adequate notice and information with which to litigate their cases.  *See Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009).  Local patent rules require disclosure of infringement contentions "early in litigation, so 'the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond.'"  *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, at 707 (E.D. Tex. 2008) (quoting *Connectel, LLC v. Cicso Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005)) (infringement contentions were deficient for lacking requisite specificity).

Contentions should disclose the factual basis for the party's assertion that the accused products do or do not infringe, and broad inferences cannot replace such factual information. *See Tessenderlo Kerley, Inc. v. OR-Cal, Inc.*, NO. C 11-04100 WHA, 2012 WL 1253178, at *2 (N.D. Cal. Apr. 13, 2012) (conclusory allegation that accused products meet claim limitation not sufficient under local rule requiring early disclosure of infringement contentions).   In this case, given Fortress's deficient or non-existent contentions, none of these important aims are realized, and PetEdge is unfairly prejudiced as a result.[4]

What Fortress is trying to pass off as its non-infringement contentions is just a single, conclusory sentence: "Fortress states upon information and belief that the RampSteps does not

---

[4]  One concrete way in which PetEdge has been prejudiced is in the claim construction procedures.  Under the Scheduling Order, the parties were required to exchange claim construction positions on Friday, April 1.  (Mr. Reilling claimed to be ill on April 1 and thus the parties exchanged positions on Monday, April 4).  But as of April 1 (and April 4), Fortress had not made its non-infringement positions known.  Thus, PetEdge could not possibly determine which claim terms, if any, might require construction beyond their plain and ordinary meanings.

ME1 22208918v.1


include each and every limitation of the claims of the Patent-in-Suit, and does not literally infringe the Patent-in-Suit." Dkt. 42 ¶ 9. This is a "non-infringement contention" in name only and PetEdge asks the Court to strike it.

Moreover, Fortress's reliance on bare "information and belief" demonstrates its lack of diligence to meaningfully analyze infringement both before filing its answer and since. How can Fortress lack enough information to even analyze infringement in a claim chart, yet at the same time deny infringement based upon "information and belief"? *See* Exh. D, *Sonic Indus., LLC v. iRobot Corp.*, No. 13 C 9251, slip op. (N.D. Ill. Feb. 28, 2014) (striking conclusory denial from defendant's answer for failing to satisfy pleading obligations under Rule 11(b)). In *Sonic Industry*, the court characterized it as "oxymoronic" for the Defendant to assert that it lacks enough information to form a belief as to the truth of an allegation and then proceed to deny such allegation. *Id.* Here too, it is oxymoronic for Fortress to assert that it lacks sufficient information—access to the accused product—to even prepare non-infringement claims charts, yet simultaneously assert "upon information and belief" that the accused product does not meet each limitation of the asserted claims. In other words, Fortress cannot possibly deny infringement at all.

Below is what Appendix E to this Court's Local Rule 16.6 suggests an accused infringer like Fortress use as a format for disclosing its non-infringement analysis:

| CLAIM LIMITATION | ACCUSED COMPONENT | BASIS OF NON-INFRINGEMENT CONTENTION |
|---|---|---|
| | | |
| | | |
| | | |

Appendix E, Local Patent Rule 16.6 Supplement, § A(2)

But in the present case, no such non-infringement claim chart even exists given that Fortress failed to prepare one by the Court's March 11th deadline (and has not done so since).[5] And the "information" upon which Fortress bases its "belief" of non-infringement is not set forth or identified anywhere. Indeed, if Fortress truly did not have a product to examine, how could it form any belief as to non-infringement? Thus, Fortress's "non-infringement contentions" lack any basis in law or fact, disregard the strictures of Local Rule 16.6 and its supplemental Appendix E, and violate the explicit requirements of this Court's Scheduling Order.

Fortress's failure to obtain even a single RampSteps unit—its own product—is no excuse for failing to provide non-infringement claim charts and is particularly unacceptable given how long Fortress has been on notice of what product was accused in this case. Any attempt by Fortress to later supplement—really, provide for the first time—its non-infringement contentions should be rejected because Fortress has not and cannot show diligence, good cause, or even explain why it could not have prepared non-infringement contentions by the Court's March 11th deadline. *See* Exh. E, *Imperium IP Holdings (Cayman), Ltd. V. Samsung Elecs. Co.*, No. 4:14-CV-371, slip op. (E.D. Tex Mar. 28, 2016) (rejecting defendants' attempt to amend invalidity

---

[5] It is important to reiterate that Fortress never sought an extension of time or otherwise suggested that it would be unable to meet its disclosure requirements by the deadline.

ME1 22208918v.1

contentions because no diligence, no good cause, and no explanation for failure to include new material by original deadline).

It strains credulity to believe that Fortress did not have ready access to its own product or, at least, the product specification. In any event, in contrast to Fortress's one-sentence contention, PetEdge's infringement contentions are quite detailed and include photos of the accused product from different angles. Those photos could have been enough on which to base any non-infringement contentions. Therefore, the Court should strike Fortress's infringement contentions and deem Fortress to have waived its right to present non-infringement positions in this case.[6]

### B.   The Court Should also Strike Fortress's Invalidity Contentions for Failing to Provide Adequate Notice and to Comply with the Court's Scheduling Order

The Court's Scheduling Order explicitly requires that Fortress identify prior art that anticipates or renders obvious the asserted claims and, "for each such prior art reference" specify whether it anticipates or is relevant to the obviousness inquiry. Independent of the existence of local rules, district courts have discretion to exclude evidence when a party acts in bad faith or prejudices its adversary by deliberately delaying, or wholly failing, to respond to contention interrogatories. *See Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012) (upholding district court's exclusion of evidence as justified by party's failure to supplement interrogatory response); *Zenith Elecs. Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 420 (7th Cir. 2005). (exclusion of evidence appropriate where party fails to cooperate in discovery, such as failing to provide contentions in response to interrogatory). While invalidity-

---

[6] This is not to say that PetEdge is seeking to be excused from its burden of proving infringement. PetEdge intends to present a complete infringement case supported by competent evidence. PetEdge is simply asking that Fortress's "non-infringement contentions" be struck and that Fortress be prohibited—given its lack of diligence and refusal to meaningfully engage in the disclosure process required by Local Rule 16.6 and the Scheduling Order—from any later attempt to present non-infringement arguments in this case.

ME1 22208918v.1

related contention interrogatories are not necessary in Massachusetts because the local rules, and this Court's Scheduling Order, already require disclosure of invalidity contentions, the present situation is analogous and the reasoning of *Woods* applies.

Here, the Court has the discretion to strike and exclude Fortress's invalidity contentions and should do so because of Fortress failing to provide proper contentions. As detailed above, Fortress failed to adequately identify the alleged prior art, provide evidence showing whether any of the products underlying the references were on sale before the '236 patent's priority date, and specify whether the listed references are offered for anticipation or obviousness purposes. These failures directly contradict § 1(c) of the Court's Scheduling Order. For the Mogck reference—the only one analyzed in a claim chart—Fortress simply parrots bald allegations that Mogck discloses certain elements, without a single citation to a particular column, line, or passage of the Mogck reference. This is a basic requirement of patent litigation practice, and Fortress's failure to comply with it leaves PetEdge without adequate notice of Fortress's invalidity position.

Fortress's conclusory allegations "that Plaintiff's claims are invalid under 35 U.S.C. § 101, 112," (Dkt. 42 ¶ 8) similarly have no supporting facts or analysis, and Fortress makes no effort to actually apply those statutes to the '236 patent. *See Info. Planning & Mgmt. Serv. Inc. v. Dollar Gen. Corp.*, No. 2:15-cv-206, 2016 WL 69902, at *5 (E.D. Va. Jan. 5, 2016) (striking both invalidity counterclaim and affirmative defense where neither had any factual support to support and defendant simply recited conclusions or listed code sections); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (pleadings require more than labels and conclusions) *Malibue Media, LLC v. Doe*, No. 2:13-CV-135-RLM-JEM, 2014 WL 1031336 (N.D. Ind. March 17, 2014) (bare bones conclusory allegations do not meet pleading standard and may be stricken). The time has come and gone for disclosing the specific bases for Fortress's

contentions of invalidity, and the Court should strike Fortress's deficient claim chart and boilerplate allegations.

## CONCLUSION

WHEREFORE, PetEdge respectfully requests that the Court strike both Fortress's non-infringement contentions and invalidity contentions as discussed above.

|  |  |
|---|---|
|  | Respectfully submitted,<br><br>PETEDGE, INC.,<br>Plaintiff,<br>By its counsel,<br><br>/s/ *Erik P. Belt*<br>Erik Paul Belt (BBO # 558620)<br>ebelt@mccarter.com<br>Brian J. Larivee (BBO #673978)<br>blarivee@mccarter.com<br>MCCARTER & ENGLISH, LLP<br>265 Franklin St.<br>Boston, MA 02110<br>Tel: 617.449.6500 |
| Date:  April 5, 2016 | Fax: 617.607.9200 |

## CERTIFICATE OF SERVICE

I, Erik Paul Belt, certify that on this 5th day of April, 2016, this document was electronically filed with the Clerk of the Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), pursuant to Local Rule 5.4(C).

/s/ *Erik P. Belt*
Erik Paul Belt